IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:    THE HONORABLE CLAIRE R. KELLY, JUDGE

| | |
|---|---|
| INTERNATIONAL RIGHTS ADVOCATES,<br><br>Plaintiff,<br><br>v.<br><br>ALEJANDRO MAYORKAS, Secretary<br>U.S. Department of Homeland Security,<br><br>TROY A. MILLER, Acting Commissioner<br>U.S. Customs and Border Protection,<br><br>Defendants. | Court No. 23-00165 |

**DEFENDANTS' SUPPLEMENTAL BRIEF**

Defendants Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security, and Troy A. Miller, Acting Commissioner, U.S. Customs and Border Protection (CBP), respectfully submit this supplemental brief pursuant to the Court's June 17, 2024 letter (Court's letter) (ECF 25) calling to the parties' attention the Supreme Court's decision in *FDA v. Alliance For Hippocratic Medicine*, 602 U.S. __, (2024), 2024 WL 2964140 (*Alliance*), and asking the parties "how the decision, if at all, affects Plaintiff's cause of action and Defendants' motion to dismiss." Court's letter at 2.  As discussed below, the Supreme Court's decision further supports the arguments in our motion to dismiss regarding the requirements for organizational standing.  In particular, the Supreme Court unequivocally rejected the notion that an organization can establish standing by "expending money to gather information and advocate against the defendant's action." *Alliance*, 2024 WL 2964140 at *13.  The *Alliance* decision thus confirms

that plaintiff, International Rights Advocates (IRAdvocates), lacks standing to bring its complaint.

## DISCUSSION

In *Havens Realty Corp. v. Coleman*, 45 U.S. 363, 379 (1982), the Supreme Court set forth the seminal standard for organizational standing. The Court held that organizational standing requires "concrete and demonstrable injury to the organization's activities – with the consequent drain on the organization's resources." *Havens*, 455 U.S. at 379. As we discussed in our motion to dismiss, IRAdvocates has failed to establish that the action it challenges impairs any of its core activities and therefore that it has suffered the requisite injury-in-fact to establish organizational standing. The Supreme Court's recent decision in *Alliance* underscores both the need for a concrete injury to the organization, and not just the interests it supports, and that no such injury has been established here.

In *Alliance*, the Supreme Court held that several doctors and medical associations lacked standing to challenge actions by the Food and Drug Administration (FDA) with respect to mifepristone, an abortion drug. In reaching this conclusion, the Court expounded on the showing an organization must make to support organizational standing. The Supreme Court reiterated that an organization must demonstrate the same elements as individuals to establish standing: injury-in-fact, causation, and redressability. The Supreme Court then went on to clarify what qualifies as an injury-in-fact, and in the process rejected two key arguments relevant to IRAdvocates's claim to standing in this case.

First, the *Alliance* Court explained that an organization may not base standing on "the intensity of [its] interest" or "strong opposition to the government's conduct." *Id*. at *13 (*citing Valley Forge Christian College v. Americans United for Separation of Church & State, Inc*., 454

2

U.S. 464, 486 (1982)).  Instead, there must be a showing of "far more" than a setback to an organization's interests.  *Alliance*, 2024 WL 2964140 at *13 (*citing Havens*, 455 U.S. at 379).

Second, the Court held that an organization cannot establish standing on the theory that it has "divert[ed] its resources in response to a defendant's actions."  *Alliance*, 2024 WL 2964140 at *13.  The *Alliance* Court reasoned that if a diversion of resources could confer standing it "would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies."  *Id.* at *13.  The Supreme Court stated unequivocally that "*Havens* does not support such an expansive theory of standing." *Id*.

On this point, the Supreme Court specifically addressed the medical associations' allegations that they incurred costs to oppose the FDA's actions.  *Alliance*, 2024 WL 2964140 at *13.  In particular, the associations claimed they had to conduct their own studies of mifepristone to better inform their members and the public of the risks, expend time and resources drafting petitions to the FDA, and engage in public education.  The associations alleged that all these activities took considerable resources to the detriment of their other priorities.  *Id.* at *14.  Nevertheless, the Supreme Court rejected the associations' claimed injury, stating "an organization that has not suffered a concrete injury caused by a defendant's action *cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action*.  An organization cannot manufacture its own standing in that way."  *Id.* (emphasis added).

The Supreme Court explained that in *Havens*, by contrast, the plaintiff organization established standing because it "not only was an issue-advocacy organization, but also operated a housing counseling service," and the defendant's "actions directly affected and interfered with"

the "core business activities" of that counseling service, just as "a retailer" can sue "a manufacturer for selling defective goods to the retailer." *Id.* at *13. The Court explained that "*Havens* was an unusual case, and this Court has been careful not to extend the *Havens* holding beyond its context." *Id.* at *14.

      IRAdvocates relies on the same type of arguments advanced by the medical associations and rejected by the Supreme Court in *Alliance*, and that decision thus underscores why standing is also lacking here. IRAdvocates claims its injury arises from CBP's failure to take action, and as a result, it had to divert resources in response to that alleged inaction. Compl. at ¶¶ 114, 119. In particular, IRAdvocates argues that its injury takes the form of the costs IRAdvocates incurred performing its own research with trips to Western Africa, continuing to submit information and engaging with CBP, and collaborating with other organizations. Compl. at ¶¶ 105, 114. There is no appreciable difference between the injury alleged here and the injury alleged by the medical associations in *Alliance*, which also claimed they were damaged by the costs required to perform their own research and studies, draft petitions to the FDA, and educate the public in response to agency actions they did not like. Here, as in *Alliance,* the expenditure of such costs in support of the organizations' chosen advocacy activities does not constitute the type of injury in fact necessary to establish standing. IRAdvocates's broad interpretation of the injury requirement in *Havens* to include a standard requiring anything less than an interference with core business activities must be rejected, just as the Supreme Court rejected the medical associations' reading of *Havens*. *Alliance*, 2024 WL 2964140 at *13.

      As *Alliance* makes clear, *Havens* requires a more direct impact on an organization's core activities – an impact that it will be "unusual" for an organization to demonstrate. *Id.* at *14. IRAdvocates fails to identify a single business activity, operation, or service that has been

4

inhibited or disrupted by CBP's alleged inaction.  IRAdvocates remains able to engage in its issue-advocacy activities "advocat[ing] for and with working people around the world, including Côte d'Ivoire."  Compl. at ¶ 117.  IRAdvocates likewise can still "promote[] enforcement of labor rights internationally through public education and mobilization, research, litigation, legislation, and collaboration with labor, government and business groups."  *Id*.  Accordingly, CBP's continuing investigation has not injured IRAdvocates's core activities in any way that is sufficient to confer standing for it to bring this challenge.

CBP takes seriously allegations of forced labor in Côte d'Ivoire and the agency's efforts are ongoing in this complex matter.  However, IRAdvocates does not have standing to maintain a cause of action to compel the agency to accelerate action on its allegations of forced labor because it has spent resources requesting CBP to take a specific action.  As with the medical associations in *Alliance*, IRAdvocates is seeking to advance "a sincere moral, ideological, and policy objection."  *Id.* at 23.   But, as the Supreme Court noted, "these kinds of objections alone do not establish a justiciable case or controversy."  *Id*.

        Respectfully submitted,

        BRIAN M. BOYNTON
        Principal Deputy Assistant Attorney General

        PATRICIA M. McCARTHY
        Director

By:    JUSTIN R. MILLER
        Attorney-In-Charge
        International Trade Field Office

        /s/ Aimee Lee
        AIMEE LEE
        Assistant Director

/s/ Marcella Powell
MARCELLA POWELL
Senior Trial Counsel

/s/ Christopher Berridge
CHRISTOPHER BERRIDGE
Trial Attorney
Department of Justice, Civil Division
Commercial Litigation Branch
26 Federal Plaza – Room 346
New York, New York 10278
Tel. (212) 264-9253 or 9230

Date:  July 9, 2024                          *Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE**

      I, Christopher Berridge, an attorney in the Office of the Assistant Attorney General, Civil Division, Commercial Litigation Branch, who is responsible for the Defendants' Supplemental Brief, dated July 9, 2024, relying upon the word count feature of the word processing program used to prepare the memorandum, certify that this memorandum complies with the word count limitation under the Court's chambers procedures, and contains 1,244 words.

                                        /s/ Christopher Berridge