IN THE UNITED STATES COURT OF
INTERNATIONAL TRADE

**HONORABLE CLAIRE R. KELLY, JUDGE**

|  |  |
|---|---|
| International Rights Advocates, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 23-00165 |
| Alejandro Mayorkas, *et. al,* | ) |
| Defendants. | ) |

**INTERNATIONAL RIGHTS ADVOCATES' [CORRECTED] SUPPLEMENTAL BRIEF ADDRESSING IMPACT OF *FDA v. ALLIANCE FOR HIPPOCRATIC MEDICINE***

In accordance with the Court's June 17, 2024 letter request (ECF No. 25), Plaintiff International Rights Advocates ("IRAdvocates") hereby files this Supplemental Brief demonstrating that the Supreme Court's decision in *FDA v. Alliance for Hippocratic Medicine*, 602 U.S. __, Slip Op. 23-235 (June 13, 2024) ("Opinion"), supports and reinforces IRAdvocates' argument that it has standing to sue to challenge Defendants' failure to act upon IRAdvocates' Petition filed under Section 307 of the Tariff Act of 1930, 19 U.S.C. § 1307 ("Section 307").

In *Alliance*, the Supreme Court dismissed for lack of Article III standing a challenge brought by four anti-abortion medical associations and several individual doctors against certain regulatory actions taken by the Food and Drug Administration ("FDA") with respect to the use and distribution of the drug Mifeprex in terminating pregnancies. Opinion at *1. The individual doctors asserted standing on the grounds of downstream conscience injuries and downstream economic injuries, and the medical associations asserted organizational standing on the grounds

of costs incurred in opposing the FDA's actions. The Supreme Court held that none of the plaintiffs suffered the requisite injury-in-fact to establish standing on any of these grounds.[1] *Id.*

With respect to the organizational injury asserted by the medical associations, they argued that their injury was based on the costs they incurred to oppose the FDA's actions, which "caused" them "to conduct their own studies on mifepristone so that the associations can better inform their members and the public about mifeprestone's risks." *Id.* at *22. The Supreme Court held that "an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action." *Id.* The medical associations responded that under the organizational standing doctrine established in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), standing exists when an organization diverts its resources in response to a defendant's actions. Opinion at *22. The Supreme Court rejected this argument because it "would mean that all the organizations in America would have standing to challenge almost every federal policy that they dislike, provided they spend a single dollar opposing those policies." *Id.*

Thus, a critical distinction between the medical associations in *Alliance* and IRAdvocates in this case is that IRAdvocates is challenging the failure of Defendant U.S. Customs and Border Protection ("CBP") to take action in response to a petition filed by IRAdvocates under a federal statute, Section 307. Congress created a legal pathway for parties to petition CBP and allege that products made with forced labor are being imported into the United States in violation of Section 307. In response to any such petition, CBP **must** investigate and address such allegations. *See* 19 U.S.C. § 1307 (providing that "[a]ll goods . . . produced . . . wholly or in part in any foreign

---

[1] Two of the three standing arguments rejected by the Supreme Court are irrelevant to this case; IRAdvocates is not an individual person that has asserted standing based on "downstream conscience injuries" or "downstream economic injuries." *See* Opinion at *13-14.

country by … forced labor … shall not be entitled to entry at any of the ports of the United States, and the importation thereof is hereby prohibited," including "forced or indentured child labor"); 19 C.F.R. § 12.42 (codifying CBP's procedure to conduct investigations into whether merchandise is prohibited from import under Section 307). *See also*, IRAdvocates' Opposition to Motion to Dismiss ("Opp MTD"), Doc. 17, at 24-32 (detailing CBP's statutory violations in failing to act on IRAdvocates' Petition).

IRAdvocates' concrete organizational injury was incurred as a result of being required to divert limited resources to challenge CBP's failure to act on IRAdvocates' lawful Petition. The medical associations in *Alliance* were merely engaged in general advocacy against the FDA's actions related to Mifeprex, a critical distinction. IRAdvocates agrees *Alliance* prevents an organization that is outraged by child labor in the cocoa industry in West Africa – and appalled enough at CBP's failure to take any action against imports of cocoa harvested by forced child labor to spend money to engage in general advocacy against CBP– from establishing standing to challenge CBP's failure to enforce the law. Only organizations like IRAdvocates that have filed a lawful Section 307 petition ***and then*** expended funds in an effort to get CBP to take statutorily required action to enforce the law have standing to challenge CBP's inaction.

Unlike the situation in *Alliance*, the line of causation between CBP's unlawful conduct and the injury suffered by IRAdvocates is not "too speculative or too attenuated." *See* Opinion at *10 (citations omitted). As IRAdvocates previously established, IRAdvocates' injury does not arise from general advocacy activities or even the resources devoted to researching, drafting, and filing its original Section 307 Petition with CBP.[2] *See* Opp MTD at 13-14. Instead, as in *Havens*,

---

[2] The substantial resources IRAdvocates expended to conduct wide-ranging field research in West Africa, and then draft and file its original Section 307 Petition with CBP were the cost of entry into the statutory process for enforcing the Tariff Act. When CBP failed to take required

3

IRAdvocates was forced to divert resources in an effort to get CBP to take required statutory action on IRAdvocates' lawful Petition and further IRAdvocates' core institutional mission of using all available tools, including Section 307, to end child slavery in cocoa harvesting.

IRAdvocates submitted timely evidence to CBP in its February 2020 Petition showing that forced child labor was used in the production of cocoa imported to the United States. Nearly a full three years later, after taking no action in violation of the law, CBP communicated to IRAdvocates that the information provided had become "dated" and that CBP could not take any action based on that "dated" evidence. *See* Complaint, Exhibits F & G, and Opp MTD at 13-14 (detailing costly efforts IRAdvocates was forced to make to get CBP to take the ***statutorily required*** action on its Petition).

The only reason that CBP was able to claim it lacked timely evidence to take action was the agency's own unlawful delay that it then used to label the evidence "dated." This is the very definition of an "unreasonable delay" as envisioned by Administrative Procedure Act ("APA") section 706(1). 5 U.S. Code § 706(1). *See* Opp MTD at 24-35 (detailing statutory grounds establishing unreasonable delay in this case). Like the plaintiff in *Havens* – and unlike the plaintiffs in *Alliance* – CBP's delay in taking action directly impeded IRAdvocates' core mission of ending the importation of cocoa produced with forced labor and directly caused it to suffer injury in the form of the diversion of additional resources to gather and present new evidence after CBP did nothing for ***three years*** and then declared IRAdvocates' evidence untimely. *See* Opinion at *23; Opp MTD at 13-14 (list of actions/expenditures by IRAdvocates after CBP's failure to act on the original Petition). But for CBP's unreasonable delay and assertion that the

---

action within a reasonable time, IRAdvocates' ***subsequent*** expenditures of time and resources to require CBP to act on the Petition were significant, *see* Opp MTD at 13-14, and were required to protect IRAdvocates' investment in the initial Petition.

delay rendered the initial evidence untimely, IRAdvocates would not have expended these additional resources. IRAdvocates' injury is the ***actual*** diversion of effort and money to attempt to convince CBP to take ***statutorily required*** enforcement action. This is not a speculative injury; it has already occurred. Nor is the injury attenuated, as IRAdvocates' costly efforts were directly in response to CBP's failure to act. Thus, IRAdvocates' injury is the ***direct*** consequence of CBP's inaction and is an injury in fact rather than a speculative injury

In addressing how the medical associations' circumstances in *Alliance* differed from those where standing was found in *Havens*, the Supreme Court characterized the core injury that gave the housing organization HOME standing is the fact that the Havens agency intentionally provided HOME with false information – which the Supreme Court analogized to "defective goods" – that "perceptibly impaired HOME's ability to provide counseling and referral services for low- and moderate-income homeseekers." Opinion at *23. Similarly, CBP's failure to take action and the bad faith explanation that CBP provided to justify that delay – that the IRAdvocates' evidence of child labor had become too dated ***after three years of unreasonable delay by CBP***–  is like the "defective goods" analogy. The CBP's own defective (and unlawful) failure to timely act upon the Petition directly affected and interfered with IRAdvocates' core mission of using all available tools, including Section 307, to fight to prevent the exploitation of forced child labor in cocoa harvesting. *See* Opp MTD at 10-13, 17, and 23.

In conclusion, the Supreme Court's decision in *Alliance* confirms that IRAdvocates has suffered the type of concrete injury to confer standing in this case. IRAdvocates suffered a concrete injury that was directly caused by CBP's unreasonable delay in taking action in response to IRAdvocates' timely and lawful Section 307 Petition.

Date: July 11, 2024                             /s/ Terrence P. Collingsworth
                                                Terrence P. Collingsworth
                                                (D.C. Bar No. 471830)
                                                INTERNATIONAL RIGHTS ADVOCATES
                                                621 Maryland Avenue, NE
                                                Washington, D.C. 20002
                                                Telephone: (202) 543-5811
                                                tc@iradvocates.org

                                                *Counsel for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I, Terrence P. Collingsworth, hereby certify that the foregoing Corrected Supplemental Brief contains 1,510 words (including text, quotations, footnotes, headings, and attachments) and therefore complies with the word limitation set forth in this Court's Chamber's Procedures. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief. In addition, the Corrected Supplemental Brief complies with Judge Kelly's Order, ECF No. 25, limiting the Supplemental Briefs to five pages.

Date: July 11, 2024

/s/ Terrence P. Collingsworth
Terrence P. Collingsworth
(D.C. Bar No. 471830)
INTERNATIONAL RIGHTS ADVOCATES
621 Maryland Avenue, NE
Washington, D.C. 20002
Telephone: (202) 543-5811
tc@iradvocates.org
*Counsel for Plaintiff*