Slip Op. 24-91

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **INTERNATIONAL RIGHTS ADVOCATES,**<br><br>    Plaintiff,<br><br>v.<br><br>**ALEJANDRO MAYORKAS, Secretary U.S. Department of Homeland Security,**<br><br>**TROY A. MILLER, Acting Commissioner U.S. Customs and Border Protection,**<br><br>    Defendants. | Before: Claire R. Kelly, Judge<br><br>Court No. 23-00165 |

## OPINION AND ORDER

[Dismissing for lack of jurisdiction plaintiff's action to compel defendants to issue decision on allegations of cocoa imported through forced child labor from the Ivory Coast in violation of 19 U.S.C. § 1307.]

Dated: August 8, 2024

Terrence P. Collingsworth, International Rights Advocates, of Washington, D.C., for plaintiff International Rights Advocates.

Aimee Lee, Assistant Director, Marcella Powell, Senior Trial Counsel, and Christopher A Berridge, Trial Attorney, U.S. Department of Justice, of New York, N.Y. and Washington D.C., for defendants Alejandro Mayorkas, Secretary U.S. Department of Homeland Security, and Troy A. Miller, Acting Commissioner U.S. Customs and Border Protection. Also on the briefs were Justin R. Miller, Attorney-In-Charge, International Trade Field Office, Patricia M. McCarthy, Director, and Brian M. Boynton, Principal Deputy Assistant Attorney General. Of counsel were Sabahat Chaudhary and Chelsea A. Reyes, Office of the Chief Counsel, U.S. Customs and Border Protection.

Kelly, Judge: Before the Court is the motion filed by Defendants Alejandro Mayorkas, Secretary, U.S. Department of Homeland Security, and Troy A. Miller, Acting Commissioner, U.S. Customs and Border Protection ("CBP") (collectively "Defendants") seeking to dismiss the action filed by Plaintiff International Rights Advocates ("IRAdvocates") for lack of jurisdiction and failure to state a claim upon which relief can be granted. See generally Defs.' Mot. Dismiss, Dec. 15, 2023, ECF No. 16 ("Defs. Mot."); Defs.' Reply Memo. To Pl.'s Opp'n [Def. Mot.], May 3, 2024, ECF No. 21 ("Defs. Reply"). IRAdvocates opposes Defendants' motion. See generally [IRAdvocates] Opp'n [Def. Mot.], Feb. 23, 2024, ECF No. 17 ("Pl. Resp."). For the reasons that follow, Defendants' motion is granted for lack of jurisdiction.

## BACKGROUND[1]

Most of the world's cocoa comes from West African countries. Côte d'Ivoire (the "Ivory Coast") is one of, if not, the largest producing countries of cocoa in the world, responsible for a bulk share of the cocoa exported from the region that makes up seventy percent of the world's cocoa supply. See Compl. at ¶ 9, Aug. 15, 2023, ECF No. 2 (citing Elian Peltier, Ivory Coast Supplies the World With Cocoa. Now It Wants Some for Itself, N.Y. Times (Aug. 13,

---

[1] The background is drawn from the allegations contained in IRAdvocates' complaint, which are accepted as true for the purposes of evaluating Defendants' motion to dismiss. See Nalco Co. v. Chem-Mod, LLC, 883 F.3d 1337, 1347 (Fed. Cir. 2018) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)); Warth v. Seldin, 422 U.S. 490, 501 (1975) ("For purposes of ruling on a motion to dismiss for want of standing, both the trial and reviewing courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party").

Court No. 23-00165                                                                                                  Page 3

2022), https://www.nytimes.com/2022/08/13/world/africa/ivory-coast-chocolate.html (last visited July 29, 2024)).  The United States receives a substantial portion of the total cocoa produced by the Ivory Coast.  See id. (first citing Marius Wessel & P.M. Foluke Quist-Wessel, Cocoa Production in West Africa, a Review and Analysis of Recent Developments, 74–75 NJAS: Wageningen J. Life Sci. 1, 1–7 (2015), https://www.tandfonline.com/doi/epdf/10.1016/j.njas.2015.09.001?needAccess=true (last visited July 29, 2024); and then citing Vivek Voora et al., Global Market Report: Cocoa, Int'l Inst. For Sustainable Dev. 1 (2019) https://www.iisd.org/system/files/publications/ssi-global-market-report-cocoa.pdf (last visited July 29, 2024)).

Forced child labor in the Ivory Coast's cocoa production is well documented and recognized not only by humanitarian organizations and nonprofits, but also by the courts and the U.S. chocolate companies themselves.  See, e.g., Compl. at ¶¶ 10–92 (citing sources).  Despite this recognition, leading chocolate producers continue to use and profit from forced child labor in the Ivory Coast.  Id. at ¶ 29.

On February 14, 2020, IRAdvocates, along with the Corporate Accountability Lab ("CAL") and the Civil Rights Litigation Clinic of University of California Irvine School of Law ("CRLC-UCI"), submitted a joint petition (the "Petition") to CBP seeking exclusion of cocoa produced in the Ivory Coast by means of forced or trafficked child labor pursuant to 19 U.S.C. § 1307 and 19 C.F.R. § 12.42(b).  Id. at ¶¶ 105, 112;

Court No. 23-00165                                                                                              Page 4

Exh. A: Petition at 1–24, Feb. 14, 2020, ECF No. 2-1 ("Petition").[2] Specifically, the Petition alleged that certain cocoa imports from the Ivory Coast by certain chocolate companies[3] were produced by forced child labor and requested CBP investigate and issue a withhold release order ("WRO") on the merchandise.[4] Petition at 1–4. The Petition detailed both statistical and first-hand evidence of forced and trafficked child labor collected by IRAdvocates, as exhibited in direct accounts from IRAdvocates investigators and victims of forced child labor in the Ivory Coast. Id. In March of

---

[2] CBP's regulations include a mechanism for which a third-party may submit allegations of products made by forced labor to CBP. Particularly, 19 C.F.R. § 12.42(b) allows for:

> Any person outside CBP who has reason to believe that merchandise produced [in violation of 19 U.S.C. § 1307] is being, or is likely to be, imported into the United States may communicate his belief to any port director or the Commissioner of CBP. Every such communication shall contain, or be accompanied by:
> (1) A full statement of the reasons for the belief;
> (2) A detailed description or sample of the merchandise;
> (3) All pertinent facts obtainable as to the production of the merchandise abroad.

In this case, the communication came in the form of the Petition sent directly to CBP. See Compl. at ¶ 105; Petition at 1–24.

[3] The chocolate companies include Nestlé, S.A. and Nestlé, U.S.A.; Cargill, Incorporated; Barry Callebaut AG, Barry Callebaut USA LLC; Mars, Incorporated and Mars Wrigley Confectionary; Olam International and Olam Americas, Inc.; the Hershey Company; World's Finest Chocolate, Inc.; and Blommer Chocolate Co. Petition at 1.

[4] Merchandise subject to a WRO is detained by CBP, and the importer of the detained merchandise can either re-export the detained shipments at any time or provide information to CBP showing that the merchandise was not produced in violation of 19 U.S.C. § 1307. See Forced Labor Frequently Asked Questions, U.S. Customs and Border Prot. (May 1, 2024), https://www.cbp.gov/trade/programs-administration/forced-labor/frequently-asked-questions (last visited July 29, 2024).

2020, IRAdvocates and CAL met with CBP to discuss the Petition. Compl. at ¶ 105. At that meeting, CBP indicated that an investigation was underway, and that it had sent requests for information to "all of the major cocoa suppliers" regarding their supply chains. Id.

On March 23, 2021, CBP again met with CAL to discuss the Petition. Id. at ¶ 106. CBP claimed that an investigation into the underlying facts of the Petition was ongoing. Id. At that time, CBP did not identify any insufficiency or untimeliness with respect to the evidentiary support within the Petition. Id. On June 25, 2021, IRAdvocates and CAL submitted a joint supplemental allegation to CBP concerning the exclusion of cocoa produced in the Ivory Coast. Id. at ¶ 107; Exh. E: Supp. 307 Petition, Jun 25, 2021, ECF No. 2-5 ("Supp. Petition").[5] CBP met with IRAdvocates and CAL on September 10, 2021, to discuss the supplemental petition. Id. at ¶ 108. Again, CBP failed to discuss the timeline or status of the pending investigation. Id. CBP failed to convey any new information regarding the investigation and gave no indication as to whether it had received the requested information from cocoa manufacturers. Id.

---

[5] The Supplemental Petition urged that CBP require the chocolate companies to provide, within 180 days, a "transparent map of [each] companies' supply chains down to the farm level," "pay the full Living Income Differential [] immediately, and move toward the Living Income price over the next 18 months" for the cocoa-producing farmers and their families, and "require that companies establish long-term contracts with cooperatives and farmers in [the Ivory Coast] over the next 18 months to ensure economic stability." Supp. Petition at 2–3.

Two years after filing the initial Petition, on February 14, 2022, IRAdvocates, CAL, and CRLC-UCI authored another letter to CBP, signed by various organizations, companies, and individuals, calling on CBP to initiate a Section 1307 enforcement action on cocoa imported from the Ivory Coast based on the Petition. See id. at ¶ 109; Exh. B: Letter to CBP at 1–8, Feb. 14, 2022, ECF No. 2-2 ("Letter of Support"). CBP failed to directly respond to or otherwise answer the letter. Compl. at ¶ 111. Months later, another meeting between CAL and CBP took place on August 15, 2022, and IRAdvocates sent a follow-up email to CBP in October of 2022, requesting an update on the investigation. Id. at ¶¶ 110–111.

On December 13, 2022, CBP responded to inquiries from IRAdvocates and the co-petitioners. Id. at ¶ 111; Exh. F: Letter From Acting Comm'r Miller at 1, Dec. 13, 2022, ECF No. 2-6 ("Dec. 13, 2022, Letter"). CBP indicated that "the information submitted with the [Petition] was dated and did not provide a sufficient basis for CBP to move forward with enforcement action under 19 U.S.C. § 1307"—the first time any concern as to the quality of the information submitted by the petitioners was raised. Dec. 13, 2022, Letter at 1. CBP provided no further clarity on the status of the investigation and did not discuss when, or if, any action would be taken. See generally id. IRAdvocates and CAL were also encouraged by CBP to submit "any additional information" concerning the allegations in the Petition "should it become available." Id.

IRAdvocates responded to CBP's letter on January 17, 2023, contesting CBP's determination that the information contained in the Petition and related submissions were dated. Compl. at ¶ 112; Exh. G: Letter To Acting Comm'r Miller at 1–3, Jan. 17, 2023, ECF No. 2-7. On February 14, 2023, CAL submitted an additional supplemental petition of ongoing forced child labor practices in cocoa production in the Ivory Coast, which remains unaddressed by CBP. See Compl. at ¶ 113; Exh. H: 2023 307 Petition at 1–7, Jan. 14, 2023, ECF No. 2-8. At no point in the "ongoing investigation" did CBP indicate a time frame to resolve the Petition, address the merits of the allegations, or indicate whether it was going to issue a ruling of any sort. See Compl. at ¶¶ 105–113; Exh. G: Letter To Acting Comm'r Miller at 1–3, Jan. 17, 2023, ECF No. 2-7.

After three and a half years of unsuccessfully petitioning CBP and with no indication that CBP intended to act, IRAdvocates filed the instant action against Defendants on August 15, 2023, asserting jurisdiction under 28 U.S.C. § 1581(i) and alleging the failure to enforce the terms of Section 1307 in violation of 5 U.S.C. § 706(1). See Compl. at ¶¶ 115–34. Specifically, IRAdvocates asks the Court to compel CBP to act on its Petition by issuing a WRO on the cocoa products imported from the Ivory Coast, determining that the Petition lacks merit, or making "some other appropriate decision in response to the Petition." Id. at ¶ 134, Request for Relief at ¶¶ A–B. On December 15, 2023, Defendants moved the Court to dismiss IRAdvocates suit for lack of subject-matter jurisdiction and for failure to state a claim

upon which relief can be granted. See generally Defs. Mot. IRAdvocates opposed Defendants' motion on February 23, 2024, to which Defendants replied on May 3, 2024. See generally Pl. Resp.; Defs. Reply.

On June 6, 2024, the Court granted IRAdvocates' untimely request for oral argument based on its counsel's excusable neglect. See Order at 1–2, June 10, 2024, ECF No. 24. On June 17, 2024, the Court requested supplemental briefing from the parties in light of the Supreme Court's decision in Food and Drug Administration v. Alliance of Hippocratic Medicine. See 602 U.S. 367, 393–96 (2024) ("Alliance"); see also Letter of the Court, June 17, 2024, ECF No. 25. On July 9 and 11, 2024, the parties submitted their supplemental briefs addressing the Court's request. See generally Defs.' Supp. Br., July 9, 2024, ECF No. 27 ("Defs. Supp. Br."); [Pl.'s] Corrected Supp. Br. Addressing [Letter of the Court], July 11, 2024, ECF No. 29-1 ("Pl. Supp. Br."). On July 16, 2024, the Court heard oral argument on the issues raised by the parties in response to Defendants' motion. See generally Oral Arg., July 16, 2024, ECF No. 33.

## STANDARD OF REVIEW

The Court reviews an action brought under 28 U.S.C. § 1581(i) under the standards provided under Section 706 of the Administrative Procedure Act ("APA"), as amended. See 28 U.S.C. § 2640(e). Under the Section 706 of the APA, the reviewing court shall

> (1) compel agency action unlawfully withheld or unreasonably delayed; and
> (2) hold unlawful and set aside agency action, findings and conclusions found to be—
>   (A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law

5 U.S.C. § 706(1)–(2)(A).

Whether the Court has subject-matter jurisdiction to hear an action is a "threshold" inquiry, Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998),[6] of which standing is a part. Lujan v. Defs. of Wildlife, 504 U.S. 555, 559–60 (1992). Further, a plaintiff fails to state a claim unless, when taking the facts in the complaint as true, its claim is "plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION

Defendants argue this action should be dismissed for lack of subject-matter jurisdiction because IRAdvocates lacks standing to bring its claim. Defs. Mot. at 14–20. Specifically, Defendants contend that IRAdvocates fails to satisfy Article III of the U.S. Constitution because: it cannot demonstrate a concrete, particularized injury in fact, there is no causal connection between the injury alleged and CBP's conduct, and the alleged injury is not likely to be redressed by a decision in IRAdvocates' favor.

---

[6] Subject-matter jurisdiction confers the Court with the power to hear a case and cannot be waived or forfeited. United States v. Cotton, 535 U.S. 625, 630 (2002). A party, or the Court on its own initiative, can object to the existence of subject-matter jurisdiction at any stage in the litigation, including after trial and entry of judgment. Arbaugh v. Y&H Corp., 546 U.S. 500, 506 (2006).

Court No. 23-00165                                                                                                    Page 10

Id.; Defs. Reply at 2–11.[7] IRAdvocates disputes Defendants' characterization of the suit, arguing that it has organizational standing under Article III to bring the action because it suffered an injury in fact that was fairly traceable to CBP's failure to act that can be redressed by a favorable decision.[8] Pl. Resp. at 9–24. Defendants' motion is granted because IRAdvocates lacks standing and therefore this Court lacks subject matter jurisdiction.[9]

      Article III of the U.S. Constitution requires plaintiffs to demonstrate standing. U.S. Const. art. III, § 2; see Lujan, 504 U.S. at 560–61. In satisfying "[t]he irreducible constitutional minimum of standing," a plaintiff must demonstrate the three elements of injury in fact, causation, and redressability. Military-Veterans Advoc. v. Sec'y of Veterans Affs., 7 F.4th 1110, 1121 (Fed. Cir. 2021); Canadian Lumber Trade All. v. United States, 517 F.3d 1319, 1331 (Fed. Cir. 2008) (citing Lujan, 504 U.S. at 560). First, the plaintiff must show that it suffered an injury in fact: a concrete and

---

[7] Concerning standing, Defendants additionally assert that the action should be dismissed because IRAdvocates lacks statutory standing, as its claims are not within the "zone of interests" of the statute that IRAdvocates seeks to enforce. Defs. Mot. at 20–22; Defs. Reply at 11–15. Defendants further argue that the action should be dismissed for failure to state a claim because Section 1307 does not mandate any agency action that can be compelled under the APA, and thus the Court cannot provide declaratory relief. Defs. Mot. at 22–35.

[8] IRAdvocates also contends its interests are protected by 19 U.S.C. § 1307 and thus satisfy the criteria for statutory standing, and further that CBP has unreasonably delayed discrete and mandatory agency action on the Petition. Pl. Resp. at 18–40.

[9] IRAdvocates asserts that the Court has jurisdiction under 28 U.S.C. § 1581(i)(1)(c), providing the Court with exclusive jurisdiction over civil actions commenced against the United States concerning "embargoes or other quantitative restrictions on the importation of merchandise for reasons other than the protection of the public health or safety." Compl. at ¶ 115.

Court No. 23-00165 Page 11

particularized "invasion of a legally protected interest" that is actual or imminent rather than conjectural or hypothetical. Lujan, 504 U.S. at 560; Military-Veterans Advoc., 7 F.4th at 1121 ("[the injury in fact requirement] ensures that the plaintiff has a 'personal stake in the outcome of the controversy'" (quoting Warth, 422 U.S. at 498)). Second, the plaintiff must demonstrate that the injury and conduct complained of are causally connected; that is, the injury is "fairly traceable to the defendant's actions or omissions," rather than those of a third party. Lujan, 504 U.S. at 560. Lastly, the plaintiff must show it is likely, rather than "merely speculative," that the injury will be redressed by a decision in the plaintiff's favor. Id. An organization establishes standing by demonstrating the same three components of constitutional standing required by an individual.[10] Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) ("Havens"); Alliance, 602 U.S. at 393–94. To satisfy the injury in fact requirement, the organization must establish "a concrete and demonstrable injury to the organization's activities." Havens, 455 U.S. at 379.

In Havens, the Court explained that an organization sufficiently pleads an injury in fact when it identifies a concrete harm to the organization. See 455 U.S. at 378–79. In that case, Housing Opportunity Made Equal ("HOME") alleged that the defendant, Havens Realty Corporation ("Havens Realty") engaged in "racial

---

[10] An organization can establish standing in one of two ways: through organizational standing; or on behalf of its members through associational standing. See United Food & Com. Workers Union Loc. 751 v. Brown Grp., Inc., 517 U.S. 544, 552–53 (1996). Here, only the former is implicated.

steering"—a practice preserving and encouraging racial segregation by steering members of racial and ethnic groups to buildings primarily occupied by those of similar racial and ethnic groups—in violation of Section 804 of the Fair Housing Act ("FHA"), 42 U.S.C. § 3604. Id. at 368–69. HOME provided counselling services for low- and moderate-income homeseekers, as well as investigations and referral of complaints involving discriminatory housing practices. Id. HOME claimed that Havens Realty's actions frustrated HOME's "efforts to assist equal access to housing through counseling and other referral services," and that as a result, HOME "had to devote significant resources to identify and counteract [Havens Realty's] racially discriminatory steering practices." Id. at 379.

The Supreme Court, in finding that HOME had Article III organizational standing, emphasized that Havens Realty's racial steering practices "perceptibly impaired HOME's ability to provide counselling and referral services for low- and moderate-income homeseekers" and constituted a concrete harm. Id. HOME's counseling had directed its clients to Havens Realty, and Havens Realty lied about available housing to those clients and sabotaged the work HOME had accomplished. Id. at 368–69.[11] The Court stressed that the organization in Havens was not only an advocacy organization, but also operated a counseling service as a core business. Id.

---

11    In Havens, the injury to HOME also caused a "consequent drain on the organization's resources" to remedy the harm caused by the defendant. 455 U.S. at 379. However, an organization cannot "spend its way into standing simply by expending money to gather information and advocate against the defendant's action." Alliance, 602 U.S. at 394.

Court No. 23-00165 Page 13

at 368. Thus, HOME's core business extended beyond advocacy. See id. at 368, 378–79. At issue was an asset with value—stemming from HOME's core business—rather than an abstract societal interest; Havens Realty's actions damaged that asset.[12] See id. at 379. In sum, Havens found injury in fact because the defendant's action harmed the plaintiff's asset. See id. (finding a perceptible injury to HOME's ability to "provide counseling and referral services").

Recently, in Alliance the Supreme Court applied Havens' rationale in the context of regulatory action. See Alliance, 602 U.S. 367. The plaintiff-organizations in Alliance challenged the Food and Drug Administration's ("FDA") approval of the drug mifepristone, used to terminate pregnancies up to ten weeks. Id. at 375–377. The organizations argued that the FDA's approval of mifepristone had "forced" them to "expend considerable time, energy and resources," engaging in public advocacy, conducting independent studies, and drafting civil actions, all of which constituted a concrete and particularized injury in fact. Id. at 394. The Court rejected the organizations' proposition that their claimed injury amounted to the same type of injury suffered by HOME in Havens. To the contrary, the FDA's approval of

---

[12] Indeed, an injury that is "merely ideological" fails to satisfy first element of standing. Alliance, 602 U.S. at 381. Allowing alleged damages to the "special interests" of an organization to suffice would result in "no objective basis upon which to disallow a suit by any other bona fide 'special interest' organization, however small or short-lived." Military-Veterans Advoc., 7 F.4th at 1129 (quoting Sierra Club, 405 U.S. at 739); see also Alliance, 602 U.S. at 382 ("The injury in fact requirement prevents the federal courts from becoming a vehicle for the vindication of the value interests of concerned bystanders" (internal quotations and citations omitted)).

Court No. 23-00165											Page 14

mifepristone did not obstruct a core business or "impose[] any similar impediment" to the organizations' mission. Id. at 395.

Inquiries into the second and third constitutional standing requirements—causation or traceability and redressability, respectively—often overlap. Alliance, 602 U.S. at 380–81 ("The second and third standing requirements—causation and redressability—are often flip sides of the same coin" (internal quotations and citations omitted)). The causation prong "examines the causal connection between the assertedly unlawful conduct and the alleged injury." Allen, 468 U.S. at 754 n.19. When government regulation of a third-party individual or business is purported to be the cause of injury to an unregulated plaintiff, that plaintiff must demonstrate a "predictable chain of events" stemming from the government action (or inaction) to the claimed injury. Alliance, 602 U.S. at 385 ("in other words, [the plaintiff must show] that the government action has caused or likely will cause injury in fact to the plaintiff"). The redressability prong "examines the causal connection between the alleged injury and the judicial relief requested." Allen, 468 U.S. at 754 n.19; see also McKinney v. U.S. Dep't of Treasury, 799 F.2d 1544, 1549–50 (Fed. Cir. 1986) (explaining that the injury caused by the defendant's actions must be "likely to be redressed should the court grant the relief requested").

Here, IRAdvocates has not met the requirements of organizational standing under Article III. The organization "advocates for and with working people around the world"—including those in the Ivory Coast—and is "committed to overcoming the

Court No. 23-00165 Page 15

problems of child labor, forced labor, and other abusive practices in the global economy." Pl. Resp. at 10; Compl. at ¶ 117. It seeks to achieve its mission by promoting the enforcement of international labor rights through "public education and mobilization, research, litigation, legislation, and collaboration with labor, government and business groups." Pl. Resp. at 10; Compl. at ¶ 117. But unlike the plaintiff in Havens, IRAdvocates does not identify how CBP's failure to act has harmed a core business or diminished any asset. See 455 U.S. at 368–69.

In contrast to Havens, IRAdvocates' claimed injury rests not on harm to a core business, but solely on CBP's failure to issue a WRO for cocoa imported from the Ivory Coast or to otherwise take action in response to the Petition. See Pl. Resp. at 11. Similar to Alliance, IRAdvocates would prefer specific action by CBP. Like the organizations in Alliance, IRAdvocates has devoted resources to persuading the agency to act in accordance with its wishes. See Compl. at ¶¶ 105–114; Pl. Mot. at 10–17; Pl. Supp. Br. at 3–5. Such expenses do not constitute injury in fact.[13] See

---

[13] Moreover, IRAdvocates has not shown that its mission has been inhibited. See Vilsack, 808 F.3d at 919. Nothing in the filings indicate that IRAdvocates cannot continue its pursuit of achieving "just and humane treatment for workers worldwide," or that it now must spend resources in a capacity independent from its issue-advocacy functions to counteract harm that CBP has caused. To the contrary, the complaint highlights that IRAdvocates remains active in advocating for and litigating cases relating to its mission statement after submitting the Petition, such as in the Courts of Appeals for the Ninth Circuit and the D.C. Circuit, and the Supreme Court of the United States. See, e.g., Compl. at ¶ 96 (describing a film highlighting IRAdvocates' work in the Ivory Coast that was released in 2022); Nestle USA, Inc. v. Doe, 593 U.S. 628 (2021) (issuing decision on June 17, 2021); Coubaly v. Cargill, Inc., 610 F. Supp. 3d 173 (D.D.C. 2022) (issuing decision June 28, 2022, appeal filed July 25, 2022).

Court No. 23-00165 Page 16

Alliance, 602 U.S. at 394 ("an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action").[14] IRAdvocates' frustration with the regulatory process fails, without more, to satisfy the injury in fact requirement because regulatory frustration is not injury in fact. See Alliance, 602 U.S. at 396 (noting plaintiffs must show "regulatory requirements likely would cause them to suffer an injury in fact"). Indeed, the federal courts are inappropriate forums for an organization to challenge a federal agency's actions based on that organization's mere ideological objection to the agency's choices. Id. at 396–97.

IRAdvocates' claim that it was injured by CBP's failure to act on the Petition after it was filed is also unavailing. See Pl. Resp. at 13; Pl. Supp. Br. at 3–5. IRAdvocates argues that the expenses it incurred as a result of CBP's delay caused

---

[14] IRAdvocates claims that CBP's failure to take action on the Petition poses "a direct conflict between [CBP's] conduct and [IRAdvocates'] mission." Pl. Resp. at 10–11. In support of its position, IRAdvocates cites Abigail Alliance for Better Access to Developmental Drugs v. Eschenbach, 469 F.3d 129, 133 (D.C. Cir. 2006). However, that case is distinguishable. Similar to Havens, the plaintiff-organization in Abigail Alliance offered counseling and educational services to assist terminally ill patients in "accessing potentially life-saving drugs." Id. at 132–33. The FDA's challenged regulations, which barred the organization's clients from accessing clinical trials for experimental drugs, were found to perceptibly impair and be in direct conflict with the organization's counseling services, thus conferring constitutional standing. Id. at 133. The court specifically found that the organization's injury was "directly attributable to FDA policies." Id. Here, CBP's inaction is not of the same nature as the FDA's in that case, as IRAdvocates does not challenge any regulations that CBP promulgated. Moreover, and discussed below, IRAdvocates' cannot establish that the alleged injury is "directly attributable" to CBP's inaction.

Court No. 23-00165                                                                                              Page 17

the organization to "divert substantial additional resources to convince CBP to take enforcement action." Pl. Mot. at 13–14; see also Pl. Supp. Br. at 4–5. Specifically, IRAdvocates claims diversions of resources towards: additional resources to prepare for and participate in the March 23, 2021, September 10, 2021, and August 15, 2022, meetings at CBP's office; collecting additional evidence of trafficking and forced labor in the Ivorian cocoa industry included in the supplemental petition filed on June 25, 2021, consisting of three trips to Western Africa visiting five regions in the Ivory Coast in 2020 to interview and observe children subject to forced labor; preparing reports, summaries of interview, affidavits, descriptions of photos, and transcripts of video and audio recording for use in information submitted in the supplemental petition; organizing and filing the February 14, 2022, letter of support to CBP; preparing the January 17, 2023, response letter to CBP's December 13, 2022, letter; and conducting additional research and obtaining new evidence to assist the creation of CAL's unanswered supplemental petition filed on February 14, 2023. See id.; Compl. at ¶¶ 106–110, 112–13; Letter of Support; Dec. 13, 2022, Letter.[15]

---

[15] In further support of its claimed injury in fact, IRAdvocates argues that "[o]nly organizations like IRAdvocates that have filed a lawful [Section 1307] petition and then expended funds in an effort to get CBP to take statutorily required action to enforce the law have standing to challenge CBP's inaction." Pl. Supp. Br. at 3 (emphasis omitted). However, the act of filing a petition does not legally bind CBP to take a particular enforcement pathway. Rather, enforcement action is warranted only after CBP has evaluated and determined the merits of the allegations in the Petition. See 19 C.F.R. § 12.42(e), (f).

Court No. 23-00165                                                                                                    Page 18

IRAdvocates' post-Petition expenditures fall squarely within the category of resources used for advocacy, litigation, or educational purposes—the types of expenses that have been consistently rejected as a basis for Article III injury in fact. See, e.g., Alliance, 602 U.S. at 394 ("But an organization that has not suffered a concrete injury caused by a defendant's action cannot spend its way into standing simply by expending money to gather information and advocate against the defendant's action"). Rather than relating to a business activity independent from its issue-advocacy functions, the expenditures appear to directly further IRAdvocates' claimed goal of "public education and mobilization, research, litigation, legislation, and collaboration with labor, government and business groups." See Compl. at ¶ 117. IRAdvocates cannot "spend its way into standing" by expending resources to gather information and advocate against forced-child labor in the Ivory Coast, be that at the outset of advocacy activities or in the middle. See Alliance, 602 U.S. at 394. Accordingly, IRAdvocates fails to demonstrate that it suffered any injury in fact as required to assume organizational standing under Article III.[16]

---

[16] Concerning the three trips to Western Africa, it would appear that these expenses similarly occurred within IRAdvocates' normally expended operational costs and insufficient to constitute injury in fact. See Vilsack, 808 F.3d at 920. The complaint details IRAdvocates' past travels to and work in the region, listing trips to the Ivory Coast in 2018 and 2019. Compl. at ¶¶ 99–100. In light of these excursions in the previous two years, attributing the 2020 trips solely to CBP's inaction is tenuous, at best, given the release of the 2022 film documenting IRAdvocates' work in the Ivory Coast and the filing of the Coubaly lawsuit in the U.S. District Court for the District of Columbia in 2021. See Compl. at ¶¶ 96, 103; see also Coubaly, 610 F. Supp. 3d 173.

Even if IRAdvocates had suffered an injury in fact, the injury is not traceable to CBP's inaction, and a decision in IRAdvocates' favor would not likely redress the injury. See Lujan, 504 U.S. at 560. As discussed, IRAdvocates' expenses resulted from CBP's inaction relate to those made in the routine operations of an organization seeking "to achiev[e] just and humane treatment for workers worldwide." Pl. Resp. at 10; see also Compl. at ¶ 117. Moreover, even if the Court compelled CBP to act, the agency might conclude that the Petition is without merit and refuse to impose Section 1307 exclusions on cocoa from the Ivory Coast—a possibility recognized in both IRAdvocates' complaint and brief. Compl. at ¶ 134; Pl. Resp. at 26–27.

Alternatively, a judgment in IRAdvocates' favor that compels CBP to issue a WRO would merely halt import of cocoa coming from the Ivory Coast—an outcome that fails to pass constitutional muster. See Alliance, 602 U.S. at 385 (clarifying that the causation element requires the plaintiff to "show a predictable chain of events leading from the government action to the asserted injury"); Lujan, 504 U.S. at 560–61 ("it must be likely, as opposed to merely speculative that the injury will be redressed by a favorable decision" (internal quotations and citations omitted)). There is no guarantee that action from CBP will immediately, or even eventually, put an end to forced child labor in the Ivory Coast. CBP's interference with IRAdvocates' mission "to fight to prevent the exploitation of forced child labor in cocoa harvesting" using all available avenues, including Section 1307, see Pl. Supp. Br. at 5, is therefore an impermissibly attenuated and speculative basis to confer constitutional standing

Court No. 23-00165 Page 20

under both the causation and redressability prongs of the analysis.  See Alliance, 602 U.S. at 385; Lujan, 504 U.S. at 560–61.  Thus, IRAdvocates has failed to show the causation and redressability elements of Article III standing.

Given that IRAdvocates does not have constitutional standing to bring its claim, the Court need not reach the remaining arguments made by the parties.  CBP's motion to dismiss for lack of subject-matter jurisdiction is therefore granted.

## CONCLUSION

IRAdvocates lacks standing to bring action against CBP to compel 19 U.S.C. § 1307 enforcement on cocoa imported from the Ivory Coast.  Therefore, Defendants' motion to dismiss is granted, and IRAdvocates complaint is dismissed for lack of subject-matter jurisdiction.  Judgment will enter accordingly.

/s/ Claire R. Kelly
Claire R. Kelly, Judge

Dated:   August 8, 2024
         New York, New York